UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

EDWARD JAMES CROMER,

                Plaintiff,                Case No. 1:07-cv-9

v.                                    Honorable Robert J. Jonker

MELINDA K. BRAMAN et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff filed his Complaint on January 4, 2007 (docket #1).  He filed several Supplements to the Complaint (docket ##5, 55, 59 ).  On February 13, 2007, this Court ordered service of Plaintiff's complaint on Defendants.  On April 6, 2007, Defendants Unknown Miron, Robert Johnson, M. Rondeau, Unknown Henley, Steve Adamson, Mark Christiansen, Susanne E. Harris-Spicer, Lyle Rutter, T. Lancour, and O. Stacewich filed a motion to dismiss (docket #25) on the ground that Plaintiff failed to exhaust his available administrative remedies.  On April 18, 2007, Defendant Unknown Kienitz filed a motion to dismiss (docket #32) joining the other Defendants' motion. Plaintiff filed numerous responses to Defendants' motions (docket ##42, 45, 46, 49, 52, 54, 60, 65 and 71).  Additionally, Plaintiff's Supplemental Brief to his complaint (docket #59) appears to be, in fact, a supplemental response to Defendants' motions and will be treated as such.  This Court converted Defendants' motions to dismiss to motions for summary judgment (docket #47).  Plaintiff also filed a Motion to Amend Complaint (docket #62), which was granted.

Upon review, I recommend that Defendants' motions for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies be granted in part and denied in part.

**Facts**

Plaintiff Edward Cromer is currently incarcerated at Alger Maximum Correctional Facility (LMF); however, the actions he complains of occurred both while he was housed at LMF and while he was housed at the Carson City Correctional Facility (DRF). In his *pro se* complaint, Plaintiff sues DRF Inspector and Security Threat Group (STG) Coordinator Mark Christiansen, Hearing Officer Susanne Harris-Spicer and the following LMF employees: Inspector and STG Coordinator Lyle Rutter, Assistant Resident Unit Supervisor (ARUS) Robert Johnson and Correctional Officers (CO) T. Lancour, O. Stacewich, (unknown) Miron, (unknown) Kienitz, M. Rondeau and (unknown) Henley.

Plaintiff's twelve claims center on his allegations that he has been incorrectly classified as a member of an STG, the "Nation of Gods and Earth (5%ers)", and was harassed and/or retaliated against for giving a speech about the teachings of his religion. Plaintiff alleges that he was given false misconduct reports, received unfair hearings regarding misconduct tickets and his security classification, and had his personal items taken or destroyed. (Am. Compl. at 9-13.)

**Analysis**

**I.      Applicable Standard for Summary Judgment**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th

Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth

Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## II.     Applicable Standard for Exhaustion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). Additionally, a plaintiff must fully exhaust his administrative remedies before filing a complaint. *See Freeman*, 196 F.3d at 645. Further, "the PLRA exhaustion requirement requires *proper* exhaustion." *Woodford v. Ngo*, 126 S. Ct. 2378, 2387 (2006) (emphasis added). Thus, in order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922 (2007); *Woodford*, 126 S. Ct. at 2386. "Compliance with the prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust." *Jones*, 127 S. Ct. at 922.

### III.    Applicable Policy

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1] was the version in effect at all times applicable to this lawsuit.  Under MDOC Policy Directive 03.02.130, inmates must first attempt to resolve a problem orally with the staff member involved within two business days of becoming aware of the grievable issue unless prevented by circumstances beyond his or her control. MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ R.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶ X.  The Policy Directive also provides the following directions for completing grievance forms:  "[t]he issues shall be stated briefly.  Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ T (emphasis in original).  Once a grievance is filed, the grievance coordinator determines if the grievance should be rejected "pursuant to this policy and, if so, sign and return the grievance to the grievant with an explanation as to why it was rejected."

*Id.* at ¶ Y.  The paragraph continues:

> If the grievance is accepted, the Grievance Coordinator shall assign an appropriate respondent and identify the date by which the response is due . . . . The Grievance Coordinator may respond at Step I to grievances which require only minimal investigation or reject[] for reasons authorized by this policy. However, if the Grievance Coordinator responds to the merits of the grievance, a grievance interview must be conducted as required by Paragraph AA.

*Id.*  At the interview, a grievant has an opportunity to explain the grievance more completely so that

---

[1]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007.  However, the December 19, 2003 version of the Policy Directive was in effect at all times applicable to the instant action.

the respondent can gather any additional information necessary to respond to the grievance.  *Id.* at ¶ AA.

The Policy Directive provides a number of reasons for which a grievance *must* be rejected and other reasons for which a grievance *may* be rejected.[2]  A grievance coordinator must reject grievances (1) jointly filed by two or more prisoners or filed by multiple prisoners as an organized protest, (2) raising certain non-grievable issues, or (3) using profanity, threats of harm or demeaning language unless those words are part of the description of the behavior which forms the basis for the grievance.  *Id.* at ¶¶ F, G. In contrast, a grievance coordinator has discretion to reject a grievance that is (1) vague, illegible, contains multiple unrelated issues or issues raised in another grievance filed by the same prisoner, (2) filed by a prisoner on modified access, (3) filed by a prisoner who did not attempt to resolve the issue with a staff member first, or (4) filed in an untimely manner.  *Id.* at ¶ G.

The Policy Directive provides guidelines, including deadlines, for internal appeals of the denial of a grievance at Step II and Step III.  *See id.* at ¶¶ R, DD.  If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due.  *Id.*  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ FF.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ R, HH.  The Step III form must be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten

---

[2]Portions of Policy Directive 03.02.130 use the words "shall be rejected" while other portions use the words "may be rejected."  *See* MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ ¶ F, G.

business days after the date the Step II response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section

is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.  Time

limitations must be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at

¶ U.  "The total grievance process from the point of filing a Step I grievance to providing a Step III

response shall be completed within 90 calendar days unless an extension has been approved . . . ."

*Id.*

### IV.     Grievances

Plaintiff has submitted twenty grievances to demonstrate exhaustion of the twelve

claims raised in his amended complaint.  Each of those grievances will be discussed below.

#### A.     *Claims 1 and 3*

Plaintiff alleges that Defendants Braman, Adamson, Christiansen and Harris-Spicer

violated Plaintiff's rights under the First and Fourteenth Amendments and Religious Land Use and

Institutionalized Persons Act (RUILPA) by retaliating against him for giving a speech about his

religious beliefs at a "Nation of Islam" group services meeting.  (Am. Compl. at 4-5, 23.)  In Claim

1, Plaintiff alleges that he was being improperly placed in solitary confinement, transferred to a

Level 5 security and designated as STG II.  In Claim 3, Plaintiff alleges that the same Defendants

"did wilfully and maliciously interpret Plaintiff's benign speech and use the disciplinary process to

effectuate transfer and punishment against Plaintiff."  (Am. Compl. at 24.)

In his Amended Complaint, Plaintiff asserts that these claims were exhausted by

grievances DRF 0503-0453-28A, DRF-0403-00379-19C and DRF 0404-0527-20A.  (*Id.* at 20; see

also Def. Br. in Supp. of Mot. for Summ. J. (Br. in Supp. MSJ) at 6-7, docket #26.)

1.   **DRF 0503-0453-28A**

Defendants assert that DRF 0503-0453-28A is duplicative of DRF-0403-00379-19C and DRF 0404-0527-20A, as well as being untimely.  (Br. in Supp. MSJ at 6.)  Plaintiff asserts that it was erroneously rejected as being duplicative, but does not contend that it was timely filed. (Docket #45, at 7.)   Plaintiff asserts that his claims were exhausted by grievances DRF-0403-00379-19C and DRF 0404-0527-20A.  The "Date of Incident" on DRF 0503-0453-28A is "12-4-03-12/19/03" and "Today's Date" is "3/7/05."  (Br. In Supp.  MSJ, Ex. 3, docket #26-5 at 2.)

Under MDOC Policy Directive 03.02.130, inmates must first attempt to resolve a problem orally with the staff member involved within two business days of becoming aware of the grievable issue unless prevented by circumstances beyond his or her control. MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ R.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ X.  The grievance was rejected a untimely because the incident occurred "almost 18 months ago."  (Br. in Supp. MSJ, Ex. 3, docket #26-5.)  Therefore, I find that Defendants have met their burden showing that DRF 0503-0453-28A did not properly exhaust Plaintiff's Claims 1 and 3.  Because DRF 0503-0453-28A is the only grievance that named Defendant Harris-Spicer, Plaintiff's first and third claims against Defendant Harris-Spicer are not properly exhausted.

2.        **DRF 0403-00379-19C**

Plaintiff filed a Step I grievance on March 1, 2004 concerning his property which was allegedly stolen by Defendant Christiansen and Defendant Braman.[3]  (Def.'s Ex. 4, docket #26-6.) According to the Step I response, the materials were removed due to an investigation of Plaintiff's misconduct regarding an attempt to incite a riot by giving a speech about the Nation of Gods and Earths Groups (the "5%ers").  (*Id.*)  Plaintiff asserts that these materials were taken to "concoct" a misconduct against him and have him classified improperly as part of an STG.  (*Id.,* Step III appeal.) Plaintiff appealed this grievance to Step III. Defendants do not contend that DRF-0403-00379-19C was not properly exhausted in their motions.  However, in their motion opposing Plaintiff's motion to amend his complaint,  Defendants appear to assert that DRF-0403-00379-19C did not comply with the time limits of the Policy Directive.

In interpreting the PLRA, it is appropriate to look to the substantively similar exhaustion rules applicable in habeas cases for guidance.  *Woodford*, 126 S. Ct. at 2384.  In the habeas corpus context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To determine whether a petitioner procedurally defaulted a federal habeas claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the

---

[3]Defendant Braman was added in Plaintiff's Step III appeal.

federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004), *cert. denied*, 544 U.S. 928 (2005); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003).

Under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance.  *See Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 2978 (2006); *Spruill v. Gillis*, 372 F.3d 218, 222 (3rd Cir. 2004) (holding that "the determination whether a prisoner has 'proper' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations.")  Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the Federal Constitution or the intended purposes of § 1997e(a).  *See Spruill*, 372 F.3d at 232.

In *Woodford*, the Supreme Court held that the exhaustion requirement was not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy.  127 S. Ct. at 2386.  However, in this case, Plaintiff's grievance was not rejected as untimely at any step of the grievance process.[4]  While Plaintiff may have failed to timely file his grievance, prison officials did not rely on the default by  rejecting the grievance as untimely.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (the doctrine of procedural default is applicable only where the rule is actually relied upon by the state courts); *see also Hicks*, 377 F.3d at 551.

---

[4]The Step II response does "note[] [that] this grievance is untimely."  However, it was addressed on the merits at Step II and Step III.  Additionally, the timeliness of the grievance was not mentioned in the Step III response at all.

Accordingly, I find that Defendants have failed to meet their burden regarding Claims 1 and 3 of Petitioner's Amended Complaint against Defendants Christiansen and Braman.

### 3.   **DRF 0404-0527-20A**

Plaintiff filed a Step I grievance on March 30, 2004.  Plaintiff asserts that he gave a speech or sermon based on materials he was given by Defendant Adamson.  The grievance asserted that Plaintiff was then given an improper misconduct for inciting a riot by giving that speech and was subsequently transferred as a result of that misconduct.  (Br. in Supp. MSJ, Ex. 5, docket #26-7.)  Plaintiff appealed this grievance to Step III. Defendants assert that it did not comply with the time limits of the Policy Directive because "it grieved an incident that occurred in December of 2003, and was not filed until March 2004."  (Br. in Supp. MSJ at 7.)  Plaintiff's grievance was not rejected as untimely at Step I or at any other Step of the grievance process.  While Plaintiff may have failed to timely file his grievance, prison officials did not rely on the default by  rejecting the grievance as untimely.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (the doctrine of procedural default is applicable only where the rule is actually relied upon by the state courts); *see also Hicks*, 377 F.3d at 551.  Accordingly, Defendants have failed to meet their burden regarding Claims 1 and 3 of Petitioner's Amended Complaint against Defendant Adamson.


### B.   *Claim 2*

Plaintiff asserts that he was deprived of an impartial tribunal by Defendant Harris-Spicer.  (Am. Compl. at 23.)  Defendants' motion argues solely that Defendant is entitled to absolute immunity and does not raise the question of whether or not Claim 2 is properly exhausted.  (Br. in Supp. MSJ at 7.)  The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory

functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). To the extent Plaintiff seeks monetary damages against Defendant Harris-Spicer, Plaintiff's claim fails because she is absolutely immune. Plaintiff, however, specifically requests "'ONLY' injunctive/declaratory relief against Defendant Harris-Spicer." (Am. Compl. at 27.) Therefore, I find that Defendants should not be granted summary judgment as to Claim 2 of Plaintiff's Amended Complaint.

### C.    Claim 4

Plaintiff alleges that Defendants Christensen and Rutter violated his due process and equal protection rights by placing him on STG status when his a member of the Nation of Islam and "mere[ly] possess[ed] Nation of God's and Earth's religious materials." (Am. Compl. at 24.) Plaintiff asserts that he exhausted this claim with grievance LMF 04-11-3264-08g and LMF 05-08-2768-28A. For the reasons set forth below, I find that Defendants have failed to meet their burden regarding Claim 4 of Plaintiff's amended complaint.

### 1.    LMF 04-11-3264-08g

Defendants assert that this grievance does not exhaust Claim 4 because it does not comply with the Policy Directive in that it fails to name anyone. (Br. in Supp. MSJ at 8.) As noted by the Supreme Court in *Jones*, "[t]he PLRA requires exhaustion of 'such administrative remedies

as are available,' 42 U.S.C. § 1997e(a) but nothing in the statute imposes a 'name all defendants' requirement for grievances . . . ." *Jones*, 127 S. Ct. at 922.  *See also Okoro v. Hemingway*, 481 F.3d 873, 874 (6th Cir. 2007) (finding that exhaustion, according to *Jones*, 127 S. Ct. at 923-25, is not "*per se* inadequate simply because a defendant was not named in the grievances").  In order to properly exhaust administrative remedies, prisoners must merely comply with the prison grievance procedures available to them.  *Jones*, 127 S. Ct. at 922-23.  Thus, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that defines the boundaries of proper exhaustion."  *Id*. at 923.

In this case, MDOC Policy Directive 03.02.130, effective December 19, 2003, defines the requirements for proper exhaustion.  This version of the MDOC Policy Directive states: "[t]he issues shall be stated briefly.  Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ T (emphasis in original).  The record reflects that the MDOC did not reject or deny Plaintiff's Grievance No. LMF 04-11-3264-08g in a Step I, II or III response under MDOC Policy Directive 03.02.130, ¶ T for failure to name those persons being grieved; rather, the MDOC addressed the grievance on the merits.

As the *Woodford* Court noted:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims.  Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

*Woodford,* 126 S. Ct. at 2385 (citation omitted).  "[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *Woodford,* 126 S. Ct. at 2385-386 (citing *L.A. Tucker Truck Lines, Inc.*, 344 U.S. at 37) (emphasis omitted).  In the instant case, the MDOC apparently found that Plaintiff properly exhausted his claim, even though he did not name any Defendants in his grievance, contrary to MDOC Policy Directive 03.02.130, ¶T, because it addressed his grievance on the merits.  The MDOC must determine whether a prisoner satisfied the critical procedural rules under its policy directives, and, thus, when a procedural defect bars a grievance from being heard on the merits.  When an administrative agency addresses an inmate's grievance and appeals on the merits, then the agency has found that the inmate satisfied the required critical procedural rules.  *See Woodford,* 126 S. Ct. at 2385 (if the agency addresses a grievance on the merits, then the inmate has "us[ed] all steps that the agency holds out, and do[ne] so properly.").  Therefore, Defendants have not satisfied their burden of demonstrating that LMF 04-11-3264-08g failed to exhaust Claim 4 against Defendant Christensen and Rutter.

### 2.    <u>LMF 05-08-2768-28A</u>

Defendants assert that this grievance does not name Defendant Christiansen and was rejected as duplicative of grievance LMF 04-11-3264-08g.   Because Plaintiff exhausted this claim against all Defendants named in the relevant count of his civil action by filing LMF 04-11-3264-08g,

it is unnecessary to determine whether LMF 05-08-2768-28A exhausted the claim.

              *D.*     *Claim 5*

Plaintiff alleges that Defendant Rutter harassed Plaintiff in violation of his First, Fourth and Fourteenth Amendment rights.  Plaintiff asserts that Defendant Rutter harassed him by failing to conduct searches of Plaintiff's cell himself and/or failing to properly train his staff to distinguish between what items of Plaintiff's property are contraband and what are not.  (Am. Compl. at 24.)

              **1.**     **LMF 05-01-0084-17A**

Defendants do not dispute that Defendant Rutter was properly named in LMF 05-01-0084-17A or that LMF 05-01-0084-17A "appears to grieve" Plaintiff's claim that Defendant Rutter "caused excessive searches of Plaintiff's property."  (Br. in Supp. MSJ at 9.)  Defendants, however, assert that LMF 05-01-0084-17A does not "grieve the claim or allegation that Rutter failed to properly train Lancour, Rondeau, Miron or Kienitz, or Stacewich about what materials were prohibited contraband."  (*Id.*)  In his Step I grievance, Plaintiff states that he is grieving Defendant Rutter because Plaintiff believes that Defendant Rutter is responsible for the improper removal Plaintiff property, either personally or through Rutter's "crew."  (Br. in Supp. MSJ, Ex. 8, docket #26-10.)  Plaintiff is not required to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory in a grievance.  "[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint."  *Bell v. Konteh,* 450 F.3d 651, 651 (6th Cir. 2006).  Plaintiff only needs to place Defendants on notice of his claims.  "[T]he primary purpose of a grievance is to alert prisoners to

a problem . . . ." *Jones,* 127 S. Ct. at 923 (citing *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004)).  Reading Plaintiff's entire grievance, Plaintiff placed Defendant Rutter on notice of his claim that Rutter was responsible for harassment of Plaintiff by the improper removal of property from Plaintiff's cell – either personally or through failure to properly train his staff.   Therefore, Defendants have not satisfied their burden.

### E.   Claim 6

Plaintiff alleges that Defendant Lancour violated his First and Fourteenth Amendment rights and RUILPA by falsifying misconduct charges, "steal[ing] pictures of black babies and arbitrarily confiscat[ing] religious materials" from Plaintiff.  (Am. Compl. at 25.) Plaintiff asserts that this claim was exhausted by grievances LMF 0509-3057-17i, LMF 05-09-3058-28A and LMF 05-09-3237-28B.  (Am. Compl. at 21; Resp. to Def. MSJ at 13, docket #42.)  Defendants asserts that Claim 6 was not properly exhausted.  For the below reasons, I find that Defendants have met their burden solely regarding Plaintiff's allegations that Defendant Lancour falsified misconduct charges against Plaintiff as set forth in Claim 6 of Plaintiff's Amended Complainant.   I further find that Defendants have failed to meet their burden regarding the remaining allegations set forth in Claim 6 of Plaintiff's Amended Complaint.

### 1.   **LMF 0509-3057-17i**

Defendants assert that LMF 0509-3057-17i does not allege retaliation by Defendant Lancour.  (Br. in Supp. MSJ at 10.)  As previously discussed, Plaintiff is not required to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory in a grievance.  At Step I, Plaintiff alleged that Defendant Lancour harassed Plaintiff by removing pictures of "black babies."  (Br. in Supp. MSJ, Ex. 9, docket #26-10.)  In the Step III appeal,

Plaintiff states that Defendant Lancour and others "are still going in my cell removing religious materials." (*Id.*)  The Step III response states that "[t]he Grievant made several allegations against staff including harassment and the inappropriate removal of property from his cell." (*Id.*)  The grievance was addressed on its merits.  Therefore, grievance LMF 0509-3057-17i placed Defendant Lancour on notice of the alleged mistreatment or misconduct that forms the basis of his constitutional and statutory claim regarding the removal of "pictures of black babies" and confiscation of religious materials from Plaintiff.  Accordingly, I find that Defendants have failed to meet their burden of proving that those allegations of Plaintiff's sixth claim for relief was not properly exhausted.

### 2.    LMF 05-09-3058-28A

Defendants assert that LMF 05-09-3058-28A was not properly exhausted because it was rejected as duplicative of LMF 0509-3057-17i and because Plaintiff violated the grievance policy for failing to discuss the matter with [Defendant] Lancour before filing the grievance." (Br. in Supp. MSJ at 10.)  Since I have found that  LMF 0509-3057-17i placed Defendant Lancour on notice of the alleged mistreatment or misconduct that forms the basis of his claims for "steal[ing] pictures of black babies and arbitrarily confiscat[ing] religious materials" from Plaintiff, it is unnecessary to address those claims regarding this grievance.

Plaintiff, however, also asserts that Defendant Lancour falsified misconduct charges and that claim was exhausted by LMF 05-09-3058-28A.  Upon review, and even assuming the grievance was not duplicative, Plaintiff's allegations in LMF 05-09-3058-28A do not assert that Defendant Lancour falsified misconduct charges.  Therefore, it did not place Defendant Lancour on notice of Plaintiff's claims that he was falsifying misconduct charges against Plaintiff.

17

### 3.      <u>LMF 05-09-3237-28B</u>

Defendants argue that LMF 05-09-3237-28B "was rejected at Step I as vague, because there was no policy violation alleged by Plaintiff, and Plaintiff did not cite any actions that were racist or how the officer was harassing by helping another officer perform a required cell shakedown."  (Br. in Supp. MSJ at 10-11.)

Plaintiff is not necessarily required to specify a particular policy that was being violated.  The Policy Directive states that the "[i]nformation provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how)."  *Id.* at ¶ T.  However, that does not mean LMF 05-09-3237-28B was not properly rejected.  At Step I, Plaintiff asserts that "c/o lancour continue[s] to harass, when attempting to discuss the harassment, c/o Lancour will go exaggerate a misconduct."  (Br. in Supp. MSJ, Ex. 11, docket #26-12.)  "Lancour continue[s] to go out his way [sic] to harass me through ambiguous policies & interpretations."  (*Id.*)  A defendant is always entitled to adequate notice about what he needs to defend against and what is at issue.  I find that Plaintiff's allegations set forth in grievance LMF 05-09-3237-28B were insufficient to place Defendant Lancour on notice of Plaintiff's claim.  Allegations that Defendant Lancour had harassed Plaintiff by "exaggerating" or falsifying misconducts against Plaintiff are simply too broad and vague to permit or require a response.  Defendants have satisfied their burden and I recommend that Plaintiff's Claim 6 regarding Defendant Lancour's alleged falsification of misconduct reports be dismissed.

F.      *Claim 7*

Plaintiff alleges that Defendant Miron confiscated Plaintiff's magazine for the purpose of "harassing and punishing Plaintiff" in violation of Plaintiff's First, Fourth, and Fourteenth Amendment rights and RUILPA.  Plaintiff asserts that grievance LMF 0511-3830-17b exhausts this claim.  (Am. Compl. at 22-23.)

## 1.      **LMF 0511-3830-17b**

Defendants assert that "Plaintiff did not file any grievances in November of 2005" according to their Grievance Inquiry Printout.  (Br. in Supp. MSJ at 11; Br. in Supp. MSJ, Ex. 2, docket #26-4.) Plaintiff, however, attached LMF 0511-3830-17b to his original complaint. (Compl., docket #1-3 at 28.)  In the Step I grievance dated November 2, 2005, Plaintiff alleged that Defendant Miron "confiscate[d] a Rap magazine" from Plaintiff's cell.  (*Id.*)  Since Plaintiff was successful at Step I and the magazine was returned to him, he did not need to file a Step II or Step III appeal to properly exhaust his claim.  Therefore, Defendants have not satisfied their burden regarding Claim 7 of Plaintiff's amended complaint.

G.      *Claim 8*

Plaintiff alleges that Defendants Rondeau, Lancour and Kienitz "erased Plaintiff's music and religious tapes for the purpose of retaliation, harassing and decentralizing [sic] and punishing Plaintiff due to its content." (Am. Compl. at 25.)  Plaintiff further alleges that Defendant Rondeau "stole" religious materials, letters and pictures from Plaintiff.  Plaintiff asserts that grievances LMF 06-04-1335-19d, LMF 06-04-1393-19d and LMF 05-08-2832-28b exhausts this claim.

19

### 1.   LMF 06-04-1335-19d

Defendants assert that LMF 06-04-1335-19d does not exhaust this claim because it does not name "any specific staff members" and "does not charge that [Defendant Rondeau, Lancour or Kienitz] erased his tapes."  (Br. in Supp. MSJ at 12.) At Step I, Plaintiff asserted that his tape player was not working after he was released from the administrative segregation unit.  (*Id.*, Ex. 13, docket #26-15.)  The Step I response indicated that during the interview, Plaintiff "claim[ed] that all his tapes were erased while they were in storage during his stay in segregation.  A check of his tapes showed that the tapes were blank."  (*Id.*)  Plaintiff repeated his assertion that his tapes were erased in his Step II and Step III appeals.  (*Id.*)  The Step II response stated that the "review and response to [Plaintiff's] Step I grievance . . . is complete, accurate and supported at this level."  (*Id.*) The  Step III response again stated that the Step I response was "supported."  (*Id.*)

The record reflects that the MDOC did not reject or deny LMF 06-04-1335-19d at any step under MDOC Policy Directive 03.02.130, ¶ T for failure to name those persons being grieved; rather, the MDOC addressed the grievance on the merits.  As discussed previously, the *Woodford* Court noted:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims.  Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

*Woodford,* 126 S. Ct. at 2385 (citation omitted).  "[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *Woodford,* 126 S. Ct. at 2385-386 (citing

*L.A. Tucker Truck Lines, Inc.*, 344 U.S. at 37) (emphasis omitted).  In this case, the MDOC apparently found that Plaintiff properly exhausted his claim, even though he did not name any Defendants in his grievance, contrary to MDOC Policy Directive 03.02.130, ¶T, because it addressed his grievance on the merits.  The MDOC must determine whether a prisoner satisfied the critical procedural rules under its policy directives, and, thus, when a procedural defect bars a grievance from being heard on the merits.  When an administrative agency addresses an inmate's grievance and appeals on the merits, then the agency has found that the inmate satisfied the required critical procedural rules.  *See Woodford,* 126 S. Ct. at 2385 (if the agency addresses a grievance on the merits, then the inmate has "us[ed] all steps that the agency holds out, and do[ne] so properly.").  Therefore, Defendants have not satisfied their burden of demonstrating that Plaintiff failed to properly exhaust Claim 8 against Defendants Rondeau, Lancour and Kienitz.

### 2.   <u>LMF 06-04-1393-19d and LMF 05-08-2832-28b</u>

Since I have found that Defendant Lancour was placed on sufficient notice of the facts underlying Claim 8 by grievance LMF 06-04-1335-19d, it is unnecessary to address Defendants' arguments regarding whether grievances LMF 06-04-1393-19d or LMF 05-08-2832-28b were properly exhausted.

### H.   *Claim 9*

Plaintiff alleges that Defendant Johnson destroyed pleadings and exhibits given to him by Plaintiff for mailing to the United States District Court, thereby violating Plaintiff's First and Fourteenth Amendment rights.  (Am. Compl. at 25-26.)  Plaintiff asserts that grievances LMF 0606-2061-17z, LMF 06-06-2233-17i and LMF 06-10-3672-28a exhausts this claim.

### 1.   LMF 0606-2061-17z

Defendants argue that LMF 0606-2061-17z was not submitted to Step III and, therefore, did not exhaust Claim 9.  Plaintiff attached a copy of LMF 0606-2061-17z to his complaint.  (Docket #1-3 at 29-32.)  Plaintiff's allegations on the Step I grievance are illegible. However, by Defendants' own analysis of LMF 06-10-3672-28a, LMF 0606-2061-17z alleges the facts underlying Claim 9 and Defendants have not submitted a legible copy of LMF 0606-2061-17z to demonstrate otherwise.  Additionally, Plaintiff submits his Step II and Step III appeals and the MDOC's Step I and Step II responses which demonstrate that the Step I grievance alleged that Defendant Johnson destroyed or stole Plaintiff's "legal work." (Docket #1-3 at 29-32.) Defendants merely cite a computer print-out of a "Grievance Inquiry" to substantiate their assertion that Plaintiff did not file a Step III appeal.  (Br. in Supp. MSJ at 13, n.34; Ex. 2, docket #26-4.)  Defendants acknowledge Plaintiff's Step II appeal.  However, they do not submit a copy in an attempt to demonstrate that Plaintiff did not complete a Step III appeal, which would usually be located on the same sheet as the Step II appeal.  Therefore, I find that Defendants have failed to meet their burden of demonstrating that Plaintiff failed to properly exhaust Claim 9 of his complaint against Defendant Johnson.

### 2.   LMF 06-06-2233-17i and LMF 06-10-3672-28a

Since I have found that Defendant Johnson was placed on sufficient notice of the facts underlying Claim 9 by grievance LMF 0606-2061-17z, it is unnecessary to address Defendants' arguments regarding whether LMF 06-06-2233-17i and LMF 06-10-3672-28a were properly exhausted.

22

I.      *Claim 10*

Plaintiff alleges that Defendant Rondeau directed a corrections officer to "plant a look-alike weapon in Plaintiff's cell because of protected speech and religion" violating Plaintiff's First and Fourteenth Amendment rights and RUILPA.  (Am. Compl. at 36.)  Plaintiff asserts that grievance LMF 0609-3442-28i exhausts this claim.  (*Id.* at 22.)

1.      **LMF 0609-3442-28i**

Defendants assert that LMF 0609-3442-28i does not properly exhaust this claim because it was denied at Step I for failure to follow the MDOC Policy Directive 03.02.130 requirement that Plaintiff attempt to resolve the problem orally with Defendant Rondeau prior to filing the grievance.  Under MDOC Policy Directive 03.02.130, inmates must first attempt to resolve a problem orally with the staff member involved within two business days of becoming aware of the grievable issue unless prevented by circumstances beyond his or her control.  MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ R.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶ X.  The MDOC rejected Plaintiff's grievance at Step I for failure to first attempt to resolve the issue with Defendant Rondeau.  (Br. in Supp. MSJ, Ex. 16, docket #26-18.)  Plaintiff has submitted no evidence showing that this rejection was in error.[5] Therefore, I find that Defendants have met their burden and I recommend dismissal of Claim 10 of Plaintiff's Amended Complaint.

---

[5]An additional grievance, LMF 06-09-3443-28b, was submitted regarding the alleged events.  (Br. in Supp. MSJ, Ex. 17, docket # 26-19.)  However, this grievance grieved Warden Bergh, not Defendant Rondeau. Therefore, it cannot exhaust Plaintiff's claim against Defendant Rondeau.

>     J.     Claim 11

Plaintiff alleges that Defendant Stacewich deprived Plaintiff of an "impartial hearing" regarding three minor misconducts, thereby violating Plaintiff's First and Fourteenth Amendment rights and RUILPA.  (Am. Compl. at 36.)  Plaintiff asserts that grievance LMF 0610-3520-27A exhausts this claim.  (*Id.* at 22.)

>     1.     **LMF 0610-3520-27A**

Defendants assert that LMF 0610-3520-27A does not properly exhaust Claim 11 because is was rejected at Step I under MICH. DEP'T. OF CORR., Policy Directive 03.02.130 because it attempted to grieve a non-grievable issue.  (Br. in Supp. MSJ at 15-16.)  It is accurate that Plaintiff's grievance was rejected by the MDOC for attempting to grieve a "non-grievable issue."  (Br. in Supp. MSJ, Ex. 18, docket #26-20.)  Under the policy, a prisoner may not grieve the result of a misconduct hearing.  MICH. DEP'T. OF CORR., Policy Directive 03.02.130 at ¶ F.  Therefore, this claim is exhausted because the grievance process is not available to Plaintiff; he has no further remedy or recourse by which to exhaust his claim.  Accordingly, I find that Defendants have failed to meet their burden regarding Claim 11 of Plaintiff's amended complaint.

>     K.     Claim 12

Plaintiff alleges that Defendant Henley fabricated misconduct charges against Plaintiff in retaliation for Plaintiff's religious activities.  (Am. Compl. at 26.)  Plaintiff asserts that grievance LMF 0610-3519-17A exhausts this claim.  (*Id.* at 22.)

1.      **LMF 0610-3519-17A**

Defendants assert that LMF 0610-3519-17A does not exhaust Claim 12 because it was untimely and "related to the hearing process, and thus improper under MDOC's grievance policy." (Br. in Supp. MSJ at 17.)  Plaintiff appealed LMF 0610-3519-17A through Step II and Step III.  (Br. in Supp. MSJ, Ex. 19, docket #26-21.)  Grievance LMF 0610-3519-17A was addressed on the merits in the response to Step I, II, and III.  Plaintiff's grievance was not rejected as untimely at Step I or at any other Step of the grievance process.  While Plaintiff may have failed to timely file his grievance, prison officials did not rely on the default by rejecting the grievance as untimely.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (the doctrine of procedural default is applicable only where the rule is actually relied upon by the state courts); *see also Hicks*, 377 F3d at 551.

Additionally, the MDOC never rejected LMF 0610-3519-17A for attempting to grieve a non-grievable issue.  As previously discussed, the MDOC must determine whether a prisoner satisfied the critical procedural rules under its policy directives, and, thus, when a procedural defect bars a grievance from being heard on the merits.  When an administrative agency addresses an inmate's grievance and appeals on the merits, then the agency has found that the inmate satisfied the required critical procedural rules.  *See Woodford,* 126 S. Ct. at 2385 (if the agency addresses a grievance on the merits, then the inmate has "us[ed] all steps that the agency holds out, and do[ne] so properly.").  Therefore, Defendants have not satisfied their burden regarding Claim 12 of Plaintiff's amended complaint.

**Recommended Disposition**

For the foregoing reasons, I recommend that Defendants's Motions for Summary Judgment (docket ## 25, 32) are granted in part and denied in part.  I recommend dismissal only of

Claims 1 and 3 against Defendant Susanne E. Harris-Spicer, Claim 6 against Defendant Lancour regarding only the alleged falsification of misconduct reports against Plaintiff, and Claim 10 against Defendant Rondeau of Plaintiff's Amended Complaint.


Dated:  February 1, 2008                                      /s/ Hugh W. Brenneman, Jr.
                                                             HUGH W. BRENNEMAN, JR.
                                                             United States Magistrate Judge



### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).