UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD JAMES CROMER,

        Plaintiff,

v.

MELINDA K. BRAMAN, et al.,

        Defendants.
                             /

Case No. 1:07-cv-9

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion for summary judgment (docket no. 86) and plaintiff's motion for summary judgment (docket no. 97).[1]

    **I.**    **Background**

        **A.**    **Plaintiff's amended complaint and the unexhausted claims**

Plaintiff's 173-paragraph amended complaint alleged twelve claims against twelve defendants: Carson City Correctional Facility (DRF) Inspector Mark Christiansen and Hearing Officer Susanne Harris-Spicer, and the following Alger Maximum Correctional Facility (LMF)

---

[1] Plaintiff did not file a response to defendants' motion as required by W.D. Mich. LCivR 7.2(c). Rather, he filed his own motion for summary judgment, in which he seeks judgment "based upon the evidence and grounds set forth in defendants [sic] propaganda brief and subjective pranks." *See* docket no. 97. This motion is, for all intents and purposes, a response to defendants' motion for summary judgment. Defendants filed a response to plaintiff's motion (*see* docket no. 99) which is in effect a reply brief. Under these circumstances, the court will treat plaintiff's motion for summary judgment as his response. In addition, the court notes that plaintiff filed various documents that were not authorized by the court rules or allowed by court order, e.g., docket no. 98 ("Plaintiff's amended brief for favorable summary judgment"), docket no. 102 ("Supplemental Brief"), docket no. 103 ("Affidavit of Edward J. Cromer"), and docket no. 105 (untitled supplement ). Although the court could have stricken these unauthorized filings, the undersigned has reviewed those filings in preparing this report and recommendation.

employees: Assistant Deputy Warden (ADW) Lyle Rutter, Assistant Resident Unit Supervisor (ARUS) Robert Johnson, Chaplain Steve Adamson, Unit Manager Melinda Braman, Resident Unit Officer (RUO) Henley and Corrections Officers Lancour, Stacewich, Miron, Kienitz, and Rondeau. In a previous order entered on March 31, 2008, the court dismissed claims 1, 2, 3, 6, 10 and 11, as well as plaintiff's claims against defendants Adamson, Harris-Spicer and Stacewich. *See* docket no. 78.

### B. Plaintiff's remaining claims

**Claim 4.** Plaintiff alleges that Inspector Christiansen and ADW Rutter put him on STG status in violation of due process and equal protection and the First Amendment.

**Claim 5.** Plaintiff alleges that ADW Rutter caused excessive and harassing searches and seizures of his property in violation of the First, Fourth and Fourteenth Amendments.

**Claim 7.** Plaintiff alleges that Corrections Officer Miron confiscated plaintiff's magazine due to its content to harass and punish plaintiff in violation of the First, Fourth and Fourteenth Amendment Equal Protection and Due Process Clauses and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1.

**Claim 8.** Plaintiff alleges that Corrections Officers Rondeau, Lancour and Kienitz destroyed his religious tapes and rap music tapes in retaliation, and in violation of the First, Fourth, and Fourteenth Amendment Equal Protection and Due Process Clauses and RLUIPA.

**Claim 9.** Plaintiff alleges that ARUS Johnson destroyed exhibits and pleadings given to him to send to the United States District Court, which prevented plaintiff from proving exhaustion of certain claims in violation of the First and Fourteenth Amendments.

**Claim 12.** Plaintiff alleges that RUO Henley fabricated a misconduct charge for damaging a trash can in retaliation for plaintiff's religious activities, in violation of the First and Fourteenth Amendments and RLUIPA.

### C. Defendant Braman

The court's March 31, 2008 order concluded that Claims 1 and 3, which included plaintiff's claims against defendant Braman, were unexhausted. However, the court did not dismiss Braman at that time because she was not a party to the lawsuit, her summons having been returned to the court as unexecuted on March 13, 2007. *See* docket no. 11. Plaintiff has made no effort to serve this defendant. More importantly, even if plaintiff would serve Braman at some point in the future, his claims asserted against her are futile, because the court has determined that the underlying grievances are unexhausted. It would be a waste of judicial time and resources to locate this defendant and serve her with a complaint that is subject to dismissal because it is premised on unexhausted grievances. It would be appropriate for the court to dismiss plaintiff's claims asserted against Braman as moot, on its own motion.

### II. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, -- U.S. --, 127 S. Ct. 1774, 1776 (2007).

### III.    Discussion

#### A.    RLUIPA violations (Claims 7, 8, 12)

Plaintiff's amended complaint includes RLUIPA claims against RUO Henley and Corrections Officers Miron, Rondeau, Lancour, and  Kienitz, in their individual capacities. *See* Amend. Compl. at ¶¶ 0-12, 15.  RLUIPA, which prevents the government from placing a burden on prisoner's religious exercise, provides in pertinent part that:

4

> (a) No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
>> (1) is in furtherance of a compelling governmental interest; and
>>
>> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. Section 3 of RLUIPA (42 U.S.C. § 2000cc-2) allows a prisoner to "assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." *Id.* at § 2000cc-2(a). However, a prisoner cannot file a RLUIPA action against defendants in their individual capacities. *See Smith v. Allen*, 502 F.3d 1255, 1271-75 (11th Cir. 2007) (prisoner plaintiff was not entitled to sue defendants in their individual capacities under section 3 of RLUIPA, noting that "a construction of RLUIPA providing for individual liability raises substantial constitutional concerns" because this section is derived from Congress' spending power and cannot be construed as creating a private action against individual defendants for monetary damages). Accordingly, defendants Miron, Rondeau, Lancour, Kienitz and Henley, who are sued in their individual capacities, are entitled to summary judgment on plaintiff's RLUIPA claims asserted against them.

### B. Plaintiff's STG II designation (Claim 4).

Plaintiff alleges that defendants Christiansen and Rutter violated his First Amendment, due process and equal protection rights by designating him as a Security Threat Group (STG)leader, when he was a member of the Nation of Islam and possessed religious material from the Nation of Gods and Earths.

On December 18, 2003, Inspector Christiansen completed an STG Member Identifier, which identified plaintiff as a "leader/enforcer" of the "Nation of Gods & Earth (5%)" (the "Five Percenters"). Defendants' Exh. 1-D.[2] An STG is defined as "a group of prisoners designated by the Director as possessing common characteristics which distinguish them from other prisoners or groups of prisoners and which, as a discrete entity, poses a threat to staff or other prisoners or to the custody and security of the facility." MDOC Policy Directive 04.04.113 ¶ A. "Prisoners are prohibited from being members of an STG." *Id.* at ¶ I. A prisoner identified as an STG member can be designated as "STG I" or "STG II." *Id.* at ¶¶ J-Z.

The Michigan Department of Corrections (MDOC) considers the Five Percenters to be an intolerant and subversive group. Defendants' Exh. 1-D. In *Fraise v. Terhune*, 283 F.3d 506 (3rd Cir. 2002) the court provided the following definition of the "Five Percenters:"

> The Five Percent Nation originated in New York City in the 1960s after its leader, Clarence Smith (also known as Clarence 13X and Father Allah), broke away from the Nation of Islam. The group's name derives from its belief in "Supreme Mathematics," which breaks down the population of the world into three groups: the Ten Percent, the Eighty Five Percent, and the Five Percent.
>
> The Ten Percent are those who have subjugated most of the world. They include white people and others who propagate the myth of a nonexistent "mystery God." The Ten Percent are described as follows in a Five Percent Nation text:
>
>> [The 10% are] the rich, slave makers of the poor. Who teach[ ] the poor lies to believe that the Almighty true and living God is a spook and cannot be seen by the physical eye, otherwise known as the blood suckers of the poor.
>
> App. 361.

---

[2] Exhibits attached to defendants' brief in support of their motion for summary judgment will be referred to as "Defendants' Exh. __."

6

> The Eighty-Five Percent are those who are subjugated and deceived. They "worship what they know not, ... are easily led in the wrong direction but [are] hard to lead in the right direction." App. 361.
>
> Finally, the Five Percent are African Americans who have achieved self-knowledge. App. 361. They "know the black man's true nature and that God is within man himself." Appellants' Br. at 14. Male members of the group are referred to as "Gods," female members are called "Earths," and the group often refers to itself as "The Nation of Gods and Earths." *See* App. 458. A declaration of a member explains:
>
>> . . . The Nation of Gods and Earths emphasizes the individual, human freedom and choice.
>>
>> . . . Our teachings include texts such as the Bible, the Koran, "The 120 Degrees," "Supreme Mathematics," and "Supreme Alphabet".
>>
>> . . . The Nation of Gods and Earths teaches that ... our status, as black men, is commensurate with that of the Supreme being.
>>
>> . . .We teach man to stop looking for a mystical God to come and solve our problems but to take responsibility to solve our own problems ourselves.
>>
>> . . . We teach that worship of Allah is tantamount to worship of oneself and that everyone has "God" within him.
>
> App. 458-59.

*Fraise*, 283 F.3d at 511 -512 (footnote omitted).

Christiansen submitted the STG Member Indentifier after plaintiff was found guilty of a major misconduct for inciting to riot and threatening behavior while speaking at a Nation of Islam religious service. Defendants' Exh. 1, 1-B. The MDOC Central Office STG Coordinator classified plaintiff as an STG II on December 29, 2003. Defendants' Exh. 1-D. As a result of the STG II classification, plaintiff is subject to various limitations, including housing restrictions, limited out-of-cell movement, and cell searches "at least twice weekly." Policy Directive 04.04.113 ¶ Y.

A prisoner's designation as a member of an STG under the MDOC policy directives does not violate his due process or equal protection rights. *Harbin-Bey v. Rutter*, 420 F.3d 571, 577-78 (6th 2005). A prisoner can file a grievance with respect to this designation, exhaust the grievance process and file a suit in federal court. *Id.* As the Sixth Circuit explained:

> The MDOC's policy directive regarding the classification of inmates as STG members is rationally related to the legitimate state interest of maintaining order in the prison. *See Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 136, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) ("There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence."). Identifying, reclassifying, and separating prisoners who are members of groups that engage in planning or committing unlawful acts or acts of misconduct "targets a core threat to the safety of both prison inmates and officials." *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 469 (4th Cir.1999).

*Harbin-Bey*, 420 F.3d at 576.

Furthermore, the classification of the Five Percenters as an STG does not violate plaintiff's First Amendment rights. *See In re Long Term Administrative Segregration of Inmates Designated as Five Percenters*, 174 F.3d 464 (4th Cir. 1999) (prison officials' classification of Five Percenters as an STG, leading to placement of group members in long-term administrative segregation or maximum custody, did not violate free exercise clause, as classification was rationally related to legitimate objective of penal security, members had other avenues available to exercise their religious practices, accommodation of members' asserted rights would come at too high a cost, and there were no ready alternatives to officials' course of action).

Accordingly, defendants Christiansen and Rutter are entitled to summary judgment with respect to plaintiff's Claim 4.

### C. Searches authorized by ADW Rutter (Claim 5)

Plaintiff also alleges that ADW Rutter harassed him in violation of the First, Fourth and Fourteenth Amendments by: having plaintiff's property searched on a regular basis; having officers seize property without knowing what property is prohibited; and failing to train staff. Amend. Compl. at ¶¶ 88-139, 166.

As an initial matter, it is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Dep't. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). There is no allegation that ADW Rutter directly participated in the alleged harassment.

In addition, the record reflects that the alleged searches and seizures arose from plaintiff's STG II classification. As previously discussed, prisoners in this classification are subject to various restrictions, including searches "at least twice weekly." Policy Directive 04.04.113 ¶ Y(5). While plaintiff alleges that he had 20 to 25 shakedowns per week, Corrections Officer Rondeau denies this claim in his affidavit. Defendants' Exh. 3, Rondeau Aff. at ¶ 12.

Furthermore, prisoners have no Fourth Amendment right protecting them from searches.

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that

> it is accepted by our society that "[l]oss of freedom of choice and privacy are inherent incidents of confinement."

*Hudson v. Palmer*, 468 U.S. 517, 527-528 (1984). While an inmates property cannot be destroyed with impunity, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.* at fn. 8. *See Padgett v. Donald*, 401 F.3d 1273, 1278 (11th Cir. 2005) ("[p]risoners have no Fourth Amendment rights against searches of their prison cells").

In his affidavit, ADW Rutter states that he explained to plaintiff that "he [plaintiff] is not allowed to possess items that were verified to belong to a designated Security Threat Group of the Michigan Department of Corrections." Defendants' Exh. 5, Rutter Aff. at ¶ 6. In addition, Rutter further stated that while staff are trained in MDOC policy and procedure regarding the identification of contraband property, they are not always able to positively identify each and every item they suspect, and so they often forward those items in question to his office for further review. *Id.* at ¶ 3. This is the procedure that appears to have occurred in this case. The record reflects that Corrections Officer Rondeau performed a search of plaintiff's property on January 1, 2006, and found several items related to an STG group (Five Percenters). Defendants' Exh. 3-C. A Notice of Intent to conduct an administrative hearing was issued on that date. *Id.* At a hearing held on January 6, 2006, the hearing officer reviewed the material, found it to be Five Percenter specific and held that it was contraband under Policy Directive 04.04.113 as material related to a recognized STG. Defendants' Exh. 3-D.

There is no evidence to support plaintiff's claim that searches and seizures were performed for any purpose other than to enforce the restrictions imposed upon plaintiff due to his

STG II classification. Defendant ADW Rutter is entitled to summary judgment on this claim.

### D. Corrections Officer Miron (Claim 7)

Plaintiff alleges that on November 1, 2005, Corrections Officer Miron "confiscated plaintiff's magazine knowingly and bogusly claiming that it was prohibited material." Amended Compl. at ¶ 105. Plaintiff raises both a procedural due process claim and a retaliation claim. It is uncontested that plaintiff's Step I grievance referred to this as a "Rap magazine." *See* docket no. 74. As the court previously noted, the grievance process was successful and the magazine was returned to plaintiff. *Id.* at p. 19. In his affidavit, Miron states that he confiscated a magazine from plaintiff in 2006 (not 2005 as alleged by plaintiff) and that the magazine was forwarded to the Inspector on suspicion that it contained gang-related material. Defendants' Exh. 7, Miron Affidavit at ¶ 4. Miron did not remember the final disposition of the magazine. *Id.*

Plaintiff's claim that he was deprived of his property without due process of law is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because plaintiff's claim is premised upon allegedly unauthorized act of a state corrections officer, he must plead and prove the inadequacy of post-deprivation remedies under state law. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir.1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th

11

Cir.1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir.1985). Plaintiff has not sustained his burden in this case because he has not alleged that his post-deprivation remedies were inadequate. On the contrary, it is undisputed that the state offered an adequate post-deprivation remedy and that plaintiff successfully utilized that remedy and that his magazine was returned to him. Accordingly, Corrections Officer Miron is entitled to summary judgment with respect to plaintiff's procedural due process claim.

Next, plaintiff alleges that Corrections Officer Miron retaliated against him by confiscating the magazine. To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (internal quotation marks omitted).

Plaintiff does not allege that he participated in any protected activity that would serve as the basis for a First Amendment retaliation claim. And if he had, it would strain credulity to believe that taking someone's magazine "would deter a person of ordinary firmness" from continuing to exercise the protected right. Indeed, it certainly has not deterred plaintiff in this instance. To the extent that plaintiff attempts to salvage his complaint with a broad brush allegation of retaliation, this claim is neither adequately pled nor shown. Accordingly, Corrections Officer Miron is entitled to summary judgment with respect to this retaliation claim.

### E.     Corrections Officers Rondeau, Lancour and Kienitz (Claim 8)

This procedural due process and retaliation claim is based upon plaintiff's allegations that defendants Rondeau, Lancour and Kienitz erased his religious tapes and rap music tapes to punish him. Amended Compl. at ¶¶ 107-112. Plaintiff alleges that on December 31, 2005, defendant Rondeau took "religious materials, academic material and law material" from him. Compl. at ¶ 107. The material was returned on April 11, 2006, at which time he discovered that his rap tapes and "Minister Louis Farrakhan tapes" had been erased. *Id.* at ¶ 108. Plaintiff further alleges that defendants Rondeau, Lancour and Kienitz had access to his property and claims that these three defendants "colluded to erase plaintiff's tapes" because they "each had routinely expressed disdain for Rap music, Islam and Nation of Islam leader Minister Louis Farrakhan." *Id.* at ¶ 110. Plaintiff raises both a procedural due process claim and a First Amendment retaliation claim.

In his affidavit, Rondeau stated that on December 31, 2005, he issued a major misconduct against plaintiff for threatening behavior. Defendants' Exh. 3, Rondeau Affidavit at ¶ 3. Plaintiff was placed in temporary segregation and was later found guilty of this misconduct. *Id.*

On January 1, 2006, Rondeau authored a Notice of Intent to conduct an administrative hearing based on STG-related material found during the packing of plaintiff's property. *Id.* at ¶ 4. The items found included five photographs with gang insignia and nine envelopes containing gang-related correspondence. *Id.* The Notice of Intent was upheld and the contraband turned over to the Inspector for disposal. *Id.* Corrections Officer Lancour states in his affidavit that he has no knowledge of any cassette tapes being erased. Defendants' Exh. 2, Lancour Affidavit at ¶ 7. Similarly, Corrections Officer Kienitz stated in his affidavit that he never took any cassette tapes from plaintiff, did not see any tapes that may have been confiscated from plaintiff and did not erase any such tapes. Defendants' Exh. 8, Kienitz Affidavit at ¶ 5. It is uncontested that plaintiff submitted a claim to the State of Michigan for the lost tapes, and received reimbursement for the property in the amount of $41.50. Defendants' Exh. 9, 9-A.

In his affidavit, plaintiff responds by stating that "It was no ghost who <u>Erase</u> my tapes but defendants." Plaintiff's Affidavit at ¶ 9 (6/27/08). This nonsensical affidavit does not create a genuine issue of fact in this matter. Pursuant to Fed. R. Civ. P. 56(e)(1), "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." In addition, Fed. R. Civ. P. 56(e)(2) provides in pertinent part that:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out <u>specific facts showing a genuine issue for trial</u>. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2) (emphasis added). Mere conclusory and unsupported allegations, rooted in speculation, do not meet a party's burden under Rule 56(e)(2). *Bell v. Ohio State University*, 351

14

F.3d 240, 253 (6th Cir. 2003). Conclusory assertions, supported only by a party's own opinions, cannot withstand a motion for summary judgment. *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008). This affidavit demonstrates that plaintiff has no personal knowledge of what occurred, but simply sets forth conclusory, speculative and sarcastic commentary in an effort to oppose defendants' affidavits. Accordingly, plaintiff's affidavit is insufficient to meet his burden under Rule 56(e). The court views defendants' affidavits as uncontradicted.

Plaintiff's procedural due process claim against Corrections Officers Rondeau, Lancour and Kienitz is also without merit because he has failed to plead and prove the inadequacy of post-deprivation remedies under state law. *See Copeland*, 57 F.3d at 479-80; *Gibbs*, 10 F.3d at 378. Furthermore, it is undisputed that plaintiff successfully utilized the state's post-deprivation remedy to receive reimbursement for the lost cassette tapes. Corrections Officers Rondeau, Lancour and Kienitz are entitled to summary judgment with respect to this claim.

### F. Defendant Johnson's destruction of exhibits and pleadings (Claim 9)

Next, claims that ARUS Johnson denied him access to the courts. Plaintiff's allegations regarding Johnson's actions make little sense. Plaintiff alleges that prior to filing the present action,[3] he had prepared a lawsuit directed against defendants Braman, Christiansen and Rutter, and former defendants Caruso and Mulvaney, which "contained most of the claims contained in the instant complaint." Amend. Compl. at ¶¶ 113-14. Plaintiff alleges that he gave this lawsuit to defendant Johnson for mailing on April 26, 2006. *Id.* at ¶¶ 113, 115-16. Plaintiff alleges ARUS Johnson acknowledged receipt of the material by signing a disbursement form, indicating that the package was addressed to the United States District Court. *Id.* at ¶¶ 115-16. When plaintiff inquired

---

[3] Plaintiff filed the present civil rights action on January 4, 2007.

into the status of the case, the court stated that it had no record of it. *Id.* at ¶ 117. According to plaintiff, ARUS Johnson later stated that "he switched plaintiff's legal papers with 57 pages of material that said the white man was the devil." *Id.* at ¶ 118. Plaintiff further alleges that the earlier lawsuit included a memo in which defendant Rutter tells a white prisoner "to associate with his own [race]" and that Johnson removed the memo from the complaint. *Id.* at ¶ 118. Thus, plaintiff alleges both that ARUS Johnson switched the contents of the lawsuit and that he never mailed it.

"It is beyond dispute that the right of access to the courts is a fundamental right protected by the Constitution." *Graham v. National Collegiate Athletic Association*, 804 F.2d 953, 959 (6th Cir.1986). *See Swekel v. City of River Rouge*, 119 F.3d 1259, 1261 -1262 (6th Cir. 1997) (*quoting Graham*). This right arises from the First and Fourteenth Amendments. *Lewis v. Casey*, 518 U.S. 343, 354 (1996). The right of access to the courts ensures that the access will be "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977).

A plaintiff must show actual injury in order to state a claim for interference with access to the courts. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). *See Sims v. Landrum*, 170 Fed.Appx. 954, 956 (6th Cir. 2006) ("[i]n assessing whether a State has violated that right, we ask whether the claimant has demonstrated an 'actual injury,' and, if so, whether the claimant has alleged that more than mere negligence by the state actor caused the injury") (internal citation omitted). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578.

In the motion for summary judgment, ARUS Johnson contends that plaintiff was not denied access to the courts, because he was able to file the present civil rights action and suffered

16

no actual injury. In his affidavit, ARUS Johnson states that he signed a disbursement from plaintiff dated April 27, 2006, for mail to the United States District Court in the amount of $4.05. Defendants' Exh. 4, Johnson Affidavit at ¶¶ 3-4; Exh. 4-A. Johnson further stated that he did not switch or remove any of plaintiff's legal papers or make the statement as alleged in ¶ 118. *Id.* at ¶ 5. In addition, ADW Rutter denied that he authored a memo as alleged in ¶ 118. Rutter Affidavit at ¶ 11.

Plaintiff points only to the April 27, 2006 disbursement form as evidence that ARUS Johnson discarded the lawsuit. In addition, plaintiff stated in his affidavit that "It was no ghost to discard lawsuit, but defendants." Plaintiff's Affidavit at ¶ 12 (6/27/08). As previously discussed, plaintiff's conclusory and sarcastic affidavit fails to meet his burden to demonstrate a genuine issue of fact under Rule 56(e). *See Bell*, 351 F.3d at 253; *Arendale*, 519 F.3d at 605. Plaintiff has presented no evidence to contradict the statements set forth in Johnson's and Rutter's affidavits. Furthermore, plaintiff has not demonstrated any actual injury. In his amended complaint, plaintiff alleges that the earlier lawsuit "contained most of the claims contained in the instant complaint." And, of course, plaintiff was free to amend the pending action, as he has, in fact, done. Plaintiff has not demonstrated any prejudice that resulted from the failure to file the lawsuit in April 2006. Accordingly, ARUS Johnson is entitled to summary judgment on this claim.

### G. Retaliation claim against RUO Henley (Claim 12)

Plaintiff alleges that on September 19, 2006, RUO Henley fabricated a major misconduct charge against plaintiff for damaging his trash can. Amend. Compl. at ¶ 131. Plaintiff alleges that the trash can had only a "small crack" and was "manipulated" prior to being placed in evidence for the hearing. *Id.* at ¶ 132. Plaintiff alleged that Henley was the only person in

possession of the trash can from September 19, 2006 until the hearing date. *Id.* at ¶ 133. Plaintiff further alleged that Henley stated that plaintiff "had to[o] much money to be a gang member" and damaged the trash can to swindle money from plaintiff and "compromise his religion." *Id.* at ¶ 134. When the charges were dismissed, Henley told plaintiff that next time he [Henley] "will do it right." *Id.* at ¶ 135.

In his affidavit, Henley stated that on September 19, 2006, while performing a routine cell shakedown, he discovered cracks in the trash can. Defendants' Exh. 6, Henley Affidavit at ¶ 4. After reviewing a prior cell inspection sheet from July 26, 2006, which indicated that there was nothing wrong with the trash can, Henley wrote plaintiff a misconduct ticket for destruction/misuse of property over $10.00, seeking $16.10 for the damaged trash can. *Id.* Henley pointed out plaintiff's admission in ¶ 132 of the amended complaint that the trash can was cracked prior to the hearing. *Id.* at ¶ 5. Henley stated in his affidavit that the trash can was not "manipulated," that he did not tamper with the evidence, and that the trash can was placed in the unit property room before the hearing. *Id.* at ¶¶ 5, 6 and 7. Henley denied that he made the statements that plaintiff attributed to him in ¶¶ 134-35. *Id.* at ¶¶ 8-9.

In his affidavit, plaintiff responds by stating "It was no ghost who mangled my trash can and falsified misconduct, but defendants." Plaintiff's Affidavit at ¶ 13 (6/27/08). Once again, plaintiff's conclusory and sarcastic affidavit, made without any actual personal knowledge, fails to meet his burden to demonstrate a genuine issue of fact under Rule 56(e). *See Bell*, 351 F.3d at 253; *Arendale*, 519 F.3d at 605.

In addition, the documentary evidence supports Henley's contention that he issued the misconduct for a non-retaliatory reason. *See generally, Scott*, 127 S. Ct. at 1776 (for purposes

18

of ruling on a motion for summary judgment, the court should not adopt a version of the facts that is "blatantly contradicted by the record"). Plaintiff's cell inspection checklist from July 26, 2006, which was signed by plaintiff, states that the cell's wastepaper basket is "ok." Defendants' Exh. 6-A. RUO Henley's major misconduct report from September 19, 2006 states that the trash can was cracked and notes that it was under plaintiff's sole area of control since the original cell inspection. Defendants' Exh. 6-B. Plaintiff acknowledges the trash can was cracked.

The misconduct hearing report from October 2, 2006, dismissed the charge against plaintiff for lack of a sufficient record. However, in making this determination, the hearing officer observed that the trash can was not damaged on the cell inspection report, that the can was recently damaged and that plaintiff may have intentionally damaged the property:

> First, apparently, cracks are not noted on the cell inspection sheet. Second, it is possible that the crack may have been misaligned by staff for purposes of the photo due to the clean edges of the crack. It should be noted that the Hearing Officer is also aware of the possibility that the can was not cracked when the prisoner was placed in his cell and the damage was done just recently due to the clean edges. This raises the further issue that, if done by the prisoner, was it done intentionally. It appears that the damage happened at the same time. It is possible that the damage was accidental due to a fall on the can. The record simply is not clear enough to make a factual finding as to what happened with the can by the preponderance of the evidence or who caused the damage. Charge is not upheld.

Defendants' Exh. 6-C.

Based on the foregoing, plaintiff's retaliation claim fails. Plaintiff does not allege any particular protected conduct that gave rise to the issuance of the major misconduct, nor does he allege any adverse consequences arising from the misconduct, which was dismissed. *See Smith,* 250 F.3d at 1037; *Thaddeus-X*, 175 F.3d at 394. In addition, both the documentary evidence and RUO Henley's uncontested affidavit and plaintiff's own admission demonstrate a legitimate reason other than retaliation as the reason for the issuance of the September 19, 2006 major misconduct, i.e., that

the trash can was cracked. Accordingly, defendant Henley is entitled to summary judgment on this claim.

### IV.     Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 86) be **GRANTED**, that plaintiff's motion for summary judgment (docket no. 97) be **DENIED**, and that this action be dismissed.


Dated:  February 26, 2009                    /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within eleven (11) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).