UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD CROMER,

        Plaintiff,

                              CASE NO. 1:07-cv-009

v.

                              HON. ROBERT J. JONKER

MELINDA BRAMAN, et. al.,

        Defendants.

_____/

## ORDER APPROVING REPORT AND RECOMMENDATION

The Court has reviewed the Magistrate Judge's Report and Recommendation (docket # 109) filed on February 26, 2009. Plaintiff filed his Objections to the Report and Recommendation (docket # 110) on March 9, 2009. Under the Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

The Report and Recommendation recommends that Defendants' Motion for Summary Judgment (docket # 86) be granted, and that Plaintiff's Motion for Summary Judgment (docket # 97) be denied. Plaintiff filed a litany of overlapping objections to the Report and Recommendation. Many of these objections do not respond to a specific aspect of the Report and Recommendation, and in most instances Plaintiff simply restates his general argument that Defendants are retaliating against him because of his religious beliefs. Ultimately, none of the objections undermines the anaylsis of the Magistrate Judge. After a de novo review of the record, the Court agrees with Magistrate Judge Brenneman that Defendants are entitled to summary judgment on all claims.

**I. Background**

Plaintiff asserts that he is a member of the Nation of Islam. Defendants assert that Plaintiff is a also a member of a separate but related religious group known as the "Nation of Gods and Earths" ("NGE").[1] The Michigan Department of Corrections ("MDOC") classifies NGE as a Security Threat Group ("STG") because NGE members espouse a racially intolerant and subversive ideology. Prisoners may not possess NGE materials. Prisoners who affiliate with NGE are designated as "STG I" or "STG II." This designation subjects prisoner to various restrictions, including limitations on out-of-cell movement and frequent in-cell searches. Plaintiff is STG II.

Plaintiff denies that he affiliates with NGE. However, Defendants have discovered in Plaintiff's possession materials deemed to be NGE-related. (Defendants' Brief in Support, docket # 87, Exhibits 1C, 2B, 3D.) Additionally, Plaintiff received a major misconduct violation in December 2003 for inciting a riot during a prison speech where he repeatedly compared Caucasian women to the devil. (*Id.*, Exhibit 1A-E.) Despite these incidents, Plaintiff argues that Defendants

---

[1] The Nation of Gods and Earths is also known as the "Five Percenters."

2

classified him as STG to retaliate against him for his membership in the Nation of Islam, and not because Defendants had basis to believe Plaintiff is actually a member of NGE.

## II. Legal Framework

Plaintiff asserts a number of claims, but the basic legal theory underlying all of these claims is that Defendants discriminated against Plaintiff because Plaintiff is a member of the Nation of Islam. Plaintiff does not contend that Defendants violated his rights as an NGE member. In fact, because Plaintiff disavows any affiliation with NGE, he cannot state a First Amendment claim based on Defendants' regulation of NGE materials or practices. *See Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) ("A prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is... sincerely held."). Rather, Plaintiff must show that Defendants' actions violate his rights as a member of the Nation of Islam.

An inmate's First Amendment right to free exercise of religion must be balanced against the prison's interests in maintaining "security, good order, or discipline in the institution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). Where an inmate challenges a prison regulation, that regulation must be upheld if it is "reasonably related to legitimate penological interests." *Flagner v. Wilkinson*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Where a prisoner claims First Amendment retaliation, the prisoner must show that defendants took adverse action against him because he engaged in protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). Speech that violates a legitimate prison regulation is not protected conduct. *Id.* at 394.

## III. Plaintiff's Objections

Plaintiff's 173-paragraph amended complaint asserts twelve distinct claims under 42 U.S.C. § 1983. In a previous order, this Court dismissed five of those claims and three of the twelve-named

defendants. (*See* docket # 78.) Magistrate Judge Brenneman addressed Plaintiff's remaining claims individually, and in each case found that Defendants were entitled to judgment as a matter of law. Plaintiff objected to the Magistrate Judge's ruling on each claim.

   A.  **Claim 4**: **Plaintiff's Security Threat Group Status**

  The Magistrate Judge determined that Plaintiff's STG status did not violate his rights under the First or Fourteenth Amendments. Plaintiff objects, arguing that his STG status is retaliatory because (1) he never possessed NGE material and is not an NGE member; and (2) the material deemed NGE-related poses no security threat. (Plaintiff's Objections, docket # 110, at 2-5.)

  Plaintiff's assertion that he is not an NGE member rings hollow. Plaintiff has been caught with NGE-related materials and he has repeatedly espoused racially intolerant views. He received a major misconduct for inciting a riot during a speech where he compared white women to the devil. He has not had the major misconduct set aside, nor has he shown by any other means that his STG status is unwarranted. Plaintiff argues that his speech and the materials he possessed relate only to the Nation of Islam, but this argument is belied by his own complaint in which he alleges that the two ideologies are "virtually identical" in most areas. (Amended Complaint, docket # 75, at ¶ 61.) This Court will not second guess the expert judgment of the prison officials responsible for identifying NGE-related material. *See Koutnik v. Brown*, 465 F.3d 777, 786 (7th Cir. 2006) ("Knowledge of prison gang symbols-how they are used and what they mean-is acquired primarily through interaction with, and observation of, prisoners."). In the absence of affirmative evidence showing that Plaintiff does not fit the STG classification or that other similarly situated inmates were treated differently, no reasonable jury could find that Defendants' decision to so classify him violates his First Amendment rights. *See Thomas v. Eby*, 481 F.3d 434, 442 (6th Cir. 2007) (noting that a

proven infraction of prison rules generally entitles defendant to summary judgment on First Amendment retaliation claims arising out of the violation); *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir. 2005) ("A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates a retaliation claim.'" (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994))).

Plaintiff cannot prevail on his Fourteenth Amendment claim because he has no constitutionally protected right to be placed in a specific security classification. *Harbin-Bey v. Rutter,* 420 F.3d 571, 576 (6th Cir. 2005); *see also Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976). Plaintiff argues that his STG designation is "arbitrary and capricious," but he presents no evidence on this point other than his own unsupported assertions that "mere possession of Nation of Gods and Earths religious materials is not a legitimate security concern." (*See* Amended Complaint, docket #75, at ¶ 165.) Moreover, Plaintiff does not appear to dispute that he used racially intolerant language in inciting a prison riot. Under these circumstances, no reasonable jury could conclude that Defendants' actions were arbitrary or that Plaintiff's STG classification is otherwise unconstitutional. *See Harbin-Bey*, 420 F.3d at 577 ("MDOC's policy directive regarding the classification of inmates as STG members is rationally related to the legitimate state interests of maintaining order in the prison."); *see also In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 471 (4th Cir. 1999) (upholding prison's blanket STG designation for all Five Percenters).

**B.    Claim 5: Search of Plaintiff's Cell and Seizure of Plaintiff's Property**

Plaintiff alleges that prison officials repeatedly searched his cell and seized religious material from him in violation of the First, Fourth, and Fourteenth Amendments. Plaintiff claims that Defendant Rutter is liable for the acts of these officials on a "failure-to-train" theory.

Plaintiff's Fourth Amendment claim fails because prison inmates have no reasonable expectation of privacy in their cells, and prison officials are free to seize any items that "disserve legitimate institutional interests." *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984). Plaintiff argues that the seizures violate Due Process because the items seized are not contraband, but this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), because Plaintiff fails to plead or prove that the prison's post-deprivation remedies are inadequate. Finally, other than Plaintiff's unfocused allegations of widespread racial animus, there is no evidence to support his First Amendment retaliation claim. Plaintiff's objections merely restate his general argument and accuse the prison hearing officers of bias. These conclusory allegations are insufficient to create a genuine issue of material fact, and Defendants are entitled to summary judgment on this claim. *Cf. Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (stating that the nonmoving party must produce "sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.")

    C.    **Claim 6: Theft of Plaintiff's Personal Photographs and Religious Materials**

Plaintiff alleges that Defendant Lancour stole personal photographs from Plaintiff's cell and arbitrarily confiscated Plaintiff's religious materials. Defendant Lancour denies having confiscated the pictures, and the record reveals that the other materials were returned to Plaintiff after the STG coordinator and prison chaplain determined the material was Nation of Islam-related, not NGE-

related. (Defendants' Brief in Support, docket # 87 Exhibit 4, Lancour Affidavit, at ¶ 4.) Plaintiff claims that Lancour violated his First and Fourteenth Amendment rights.

This Court partially dismissed this claim as unexhausted in a March 31, 2008 order. (Docket # 78). The Report and Recommendation does not specifically address the aspects of this claim that survive that order, but Defendants are nevertheless entitled to summary judgment on this claim. Plaintiff's Fourteenth Amendment claim fails because he fails to plead or prove that the prison's post-deprivation remedies are inadequate. *Parratt v. Taylor*, 451 U.S. 527 (1981). In fact, the adequacy of those remedies is demonstrated by the fact that Plaintiff was successful in his efforts to reclaim the property.

Plaintiff's First Amendment claim fails for the reasons previously discussed in the Court's analysis of claims five and six. By Plaintiff's own admission, many practices and beliefs in NGE are "virtually identical" to those in the Nation of Islam. The fact that Defendant Lancour mistakenly believed certain materials to be NGE-specific, does not, without more, establish that he seized the materials to retaliate against Plaintiff because Plaintiff is a member of the Nation of Islam. At most, this evidence establishes only that prison officials sometimes need to rely on the expert evaluation of the STG coordinator or prison chaplain to distinguish between NGE and Nation of Islam materials. Plaintiff presents no evidence that Lancour improperly confiscated material from other Nation of Islam members or that other similarly situated inmates were treated differently. Accordingly, Defendant Lancourt is entitled to summary judgment on this claim.

      D.      **Claim 7: Confiscation of Plaintiff's Magazine**

Plaintiff alleges that Defendant Miron stole his "rap magazine" in violation of the First, Fourth, and Fourteenth Amendments. Defendant Miron stated that he confiscated the magazine

because he suspected it contained gang-related material. (Defendants' Brief in Support, docket #87, Exhibit 7, Miron Affidavit at ¶ 4.) Plaintiff pursued a grievance regarding the magazine, and the magazine was returned to him.

Plaintiff's claim here fails for the same reasons previously discussed in the Court's analysis of claims four, five and six. The fact that Plaintiff successfully pursued a grievance does not relieve him of the requirement to prove that Defendant Miron confiscated the magazine to retaliate against Plaintiff. *Cf. Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) ("[P]laintiff must be able to prove that the exercise of the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct.") Plaintiff's unsupported and conclusory allegations regarding Miron's motives are insufficient to create a genuine factual dispute on this issue. *See King v. Zamiara*, 150 Fed. Appx. 485, 496 (6th Cir. 2005) (dismissing a retaliation claim where plaintiff was found not guilty on the misconduct charges but "the ticketing officer had reason to believe that [plaintiff] was violating the rules when she filed her charge").

Plaintiff's objection to the Magistrate Judge's recommendation on this claim does not address any specific aspect of the recommendation, nor does it raise any issues not already considered by the Magistrate Judge. Accordingly, Defendants are entitled to summary judgment on this claim. *Stamtec, Inc. v. Anson*, 296 Fed. Appx. 518, 520 (6th Cir. 2008) ("[A] general or non-specific objection to a report and recommendation is tantamount to no objection at all.").

### E. Claim 8: Confiscation of Plaintiff's Audio Tapes and Letters

Plaintiff alleges that Defendants erased his religious and rap music tapes and stole religious and academic materials from him in violation of the First and Fourteenth Amendments, and the Religious Land Use and Protection Act. The "religious and academic materials" to which Plaintiff

refers were found by a prison inspector to be gang-related. Plaintiff argues that the materials were not gang-related, but he has not had the inspector's determination set aside, nor does he present any other evidence that would allow a jury to conclude that the tapes were improperly seized.

Plaintiff did receive partial reimbursement from the state of Michigan for his lost or damaged audio tapes. However, Defendants deny that they confiscated or erased Plaintiff's tapes. (Defendants' Brief in Support, docket # 87, Exhibit 2, Lancour Affidavit; *Id.*, Exhibit 8, Kienitz Affidavit.) Other than his own affidavit stating that "It was no ghost who Erase my tapes but defendants," Plaintiff offers no evidence of any kind related to the tapes.

In his Objections, Plaintiff accuses the Magistrate Judge of "hide and seek tactics" and bias against Plaintiff because the Report and Recommendation refers to the items seized as "religious materials" rather than "mail." (Docket # 110, at 9-10.) Regardless of the nature of the materials, "[a] prisoner's right to received mail is subject to prison policies and regulations that are reasonably related to legitimate penological interests." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). Prison policies prohibiting gang-related materials are reasonably related to maintaining security, good order, and discipline at the prison. *Id.* at 579. Plaintiff disputes whether the materials seized were in fact gang-related, but on this record there is insufficient evidence to allow a reasonable jury to conclude that the materials were not gang-related or that Defendants have otherwise violated Plaintiff's constitutional or statutory rights. Accordingly, Defendants are entitled to summary judgment on this claim.

    **F.**    **Claim 9: Destruction of Plaintiff's Prior Lawsuit**

Plaintiff alleges that Defendant Johnson destroyed exhibits and pleadings to a prior lawsuit that Plaintiff gave to Johnson for mailing. Johnson denies altering or destroying Plaintiff's

9

previous complaint, and the record shows that Johnson signed a disbursement for $4.05 to Plaintiff for mailing to this Court. (Defendant's Brief in Support, docket # 87, Exhibit 7.) Much like his other claims, Plaintiff's claim against Defendant Johnson is purely conjectural. Plaintiff accuses Johnson and other prison officials of making racist comments, but Johnson denies ever having made such comments and there is no evidence in the record tending to show that he altered or destroyed Plaintiff's previous complaint. Plaintiff's conclusory allegations of widespread racial animosity and misconduct are insufficient to create an issue of material fact. *See Arendale v. City of Memphis*, 519 F.3d 587, 593 (6th Cir. 2008). Moreover, Plaintiff's objection to this aspect of the Report and Recommendation merely reargues his general theory of retaliation and accuses the Magistrate Judge of bias. Defendant Johnson is entitled to summary judgment on this claim.

### G. Claim 12: Fabricated Misconduct Charges

Plaintiff alleges that Defendant Henley fabricated a major misconduct charge accusing Plaintiff of intentionally damaging his prison-issued garbage can. Plaintiff received a hearing addressing the misconduct, and the charges were dropped because there was insufficient evidence of intentionality.

Plaintiff presents no evidence that the major misconduct charges were "fabricated" or that the charges otherwise violate any of Plaintiff's constitutional or statutory rights. The fact that Plaintiff was found not guilty on the major misconduct charge does not, without more, establish that Defendant Henley filed the charge to retaliate against Plaintiff. *Cf. King v. Zamiara*, 150 Fed. Appx. 485, 496 (6th Cir. 2005) (dismissing a retaliation claim where "the hearing officer's findings in no way create[d] any evidence of why Defendant Lewis falsely accused [Plaintiff]"). Plaintiff's objection to this aspect of the Report and Recommendation merely restates his general argument

and quibbles with the Magistrate Judge's labeling of his affidavit as "sarcastic." Plaintiff does not identify any evidence that would allow a reasonable jury to find for him on this claim, and Defendants are entitled to summary judgment.

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge, filed February 26, 2009, is approved and adopted as the opinion of the Court, as further supplemented by this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (docket # 97) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (docket # 86) is **GRANTED**. The case is **DISMISSED**.

                                        /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        UNITED STATES DISTRICT JUDGE

Dated: March 25, 2009